HASKELL *et al.*, Plaintiffs in Error, v. CHAMPION *et al.*,
Defendants in Error.

1. One B. F. C. C., member of a partnership firm doing business under the style of " C. & Co.," executed a promissory note in his own name, B. F. C. C., and procured the signatures of persons not members of said firm as endorsers for his accommodation; before procuring the sale of the note, and without the knowledge of said endorsers, he added to the signature the words " & Co." — thus making it "B. F. C. C. & Co." The same was then sold for his accommodation. *Held,* in a suit by the purchaser against the maker and endorsers, that the endorsers were discharged by the alteration.

*Error to St. Louis Circuit Court.*

This was a suit against Champion as maker and the other defendants as endorsers of a negotiable promissory note. The note was signed " B. F. C. Champion & Co.," and the signature proved to be in the handwriting of Champion. All the other signatures were proved to be genuine, and due demand, refusal of payment, protest and notice were proved; also the copartnership of plaintiffs, and of defendants C. D. and J. T. Sullivan. The defence rested upon the following facts, which were proved : B. F. C. Champion executed the note and obtained the endorsements of the Sullivans and Papin for his accommodation. He then delivered the note to Myerson to be sold by him. Myerson endorsed and sold the note to plaintiffs. When the note was first handed to Myerson, (after the endorsements of the Sullivans and Papin,) it was executed in the name of " B. F. C. Champion." Champion was a member of a firm styled " Champion & Co." Plaintiffs, when they were first asked by Myerson to buy the note, told him they would prefer to have the firm of Champion & Co. as makers. Myerson then took the note back to Champion, who, without consulting the endorsers, Sullivan and Papin, added the words " & Co." to his individual signature. The note thus altered was bought by the plaintiffs. It was proved that there never was any such firm as " B. F.

C. Champion & Co."—the style of the only firm of which Champion was a member being "Champion & Co."

Upon this proof, plaintiffs asked the following instructions: "1. If the note in question was originally signed by B. F. C. Champion as maker and the words "& Co." were added subsequent to the endorsement thereof and without the consent of the endorsers, yet the alteration does not avoid the note, if said alteration was made before a transfer thereof for value. 2. If notice of the dishonor of the note in question was duly given to the endorsers, then they stand charged as endorsers although the above mentioned alteration of the note may have been made as above stated, and although the notices of protest may have described the note as made by 'B. F. C. Champion & Co.' 3. The alteration above spoken of was wholly immaterial, if there was in fact no such firm as 'B. F. C. Champion & Co.' The addition of the words '& Co.' did not change the relations of any parties to the note."

All of which the court refused. The court then rendered judgment for the plaintiffs against defendants Champion and Myerson, and against plaintiffs and for defendants, the Sullivans and Papin.

*Krum & Harding*, for plaintiffs in error.

I. There being no such firm as "B. F. Champion & Co.," the addition of the words "& Co." to the name of B. F. C. Champion did not in any way vary the contract, or affect the rights, liabilities or relations of the parties. It may be treated as a flourish, meaning nothing. (See Chitty on Bills, 184; 15 Pick. 239; 18 Johns. 391; 10 Conn. 192.) The alteration was made before it was issued. It had no vitality until plaintiffs bought it. (5 B. & Ald. 674; Byles on Bills, 390.) In that case the maker had a right to make any alteration not affecting the relations of the parties before issuing it. (Byles on Bills, 390.) The case of Trigg v. Taylor, 27 Mo. 245, was a case of fraudulent alteration, and had no reference to circumstances like those presented in this case. Whether the alteration was material or not was a question

for the court. (4 How., Miss., 231; 7 S. & R. 508; 2 N. H. 543.) The instructions asked should have been given.

*A. J. P. Garesché* and *A. M. & S. H. Gardner*, for defendants in error.

I. The change was material. (1 Greenl. Ev. § 568; Trigg v. Taylor, 27 Mo. 247.)

SCOTT, Judge, delivered the opinion of the court.

The law, in dealing with the subject of the alteration of written instruments, looks further than to the materiality or immateriality of the alteration. Aware of the danger of countenancing the most trifling change, it has not permitted those entrusted with such instruments to alter them and afterwards defend their conduct by alleging the immateriality of the alteration. There is a motive to such conduct, and if an alteration of an instrument is immaterial, and believed to be so, there can be no inducement to the act. Every man's sense of justice and propriety must teach him that it is wrong to alter in any way an instrument made by another which is to bind him. As the nature and purposes of contracts require that they should pass to the hands of those who are interested in altering them to the prejudice of those who execute them, and as the facilities for making alterations are numerous and the difficulty of proving them is great, all means should be employed to impress on the minds of those who are in the possession of such paper a sense of its inviolability.

Greenleaf, speaking of instruments which are made void by reason of their alteration, says the grounds of this doctrine are two-fold. The first is that of public policy, to prevent fraud, by not permitting a man to take the chance of committing a fraud without running any risk of losing by the event when it is detected. The other is to insure the identity of the instrument and prevent the substitution of another without the privity of the party concerned. (Sec. 565; Mudlin v. Platte County, 8 Mo. 238; 19 Penn. State Rep. 119.)

We do not consider the alteration was a matter of indiffer-

ence. It certainly affected the payee and endorsers. Had they paid the note, the alteration would have confused and embarrassed them in obtaining indemnity from the maker. Although there was no firm whose style was B. F. C. Champion & Co., yet if a note for a debt due by Champion & Co. had been executed in the style of B. F. C. Champion & Co., it does not follow that Champion & Co. would not have been liable. Partners, by misnaming the style of their partnership, can no more obtain an advantage than individuals by misnaming themselves. They may embarrass their creditors in the pursuit of their remedies by such a course, but they can not expect thereby to escape the payment of their liabilities. The note, as originally executed, imported that it was for a debt of B. F. C. Champion. If afterwards it is altered to make it a debt due by a firm, how are the payee and endorsers to know how to sue upon it? Will they sue the original maker or the partners? Will the endorsers, other than the payee, know whether or not it was for a partnership debt? The individual note of a member of a firm may be a preferable security to a note of the firm. This is obvious when we regard the law of partnerships as it is administered under the rules of equity, rules to which all partnerships are subject in the adjustment of demands against them in case of insolvency. To put a note in a condition that long and expensive litigation will be necessary to realize its proceeds, is a great diminution of its value.

Although Champion, as the maker of the note, had a right to make any alterations he pleased before he uttered it, yet it can not be maintained that the maker of a promissory note, after he has signed it and procured the endorsement of the payee and others as endorsers, can substitute the name of another maker without the consent of the payee and endorsers. This is too plain to need any argument or illustration.

Judgment affirmed; Judge Ewing concurs. Judge Napton absent.