WESTERN BUILDING AND LOAN ASSOCIATION, Appellant,
*v.* M. G. FITZMAURICE ET AL., Respondents.

June 3, 1879.

1. An instrument of writing is not rendered void by an alteration which neither varies its meaning nor affects its operation, but which only expresses what the law implies.

2. The question of the materiality of an alteration of a written instrument is one of law; the questions as to whether the alteration was made, and, if so, when and by whose authority, are questions of fact for the jury.

3. The insertion in a bond of the words "are held and firmly bound," where omitted, is immaterial where the language used is amply sufficient to express the obligation intended.

4. A departure from the plans and specifications, for which authority may be implied from the terms of the building-contract, does not operate a discharge of the sureties on a bond given to secure the fulfilment of the contract, although the change was not necessary for the completion of the building.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

HITCHCOCK, LUBKE & PLAYER, for appellant: The question of materiality is one of law, for the court. — *The State ex rel. v. Dean*, 40 Mo. 464; 2 Pars. on Con. 721. An alteration not material in law will not avoid a contract. — *Briggs* v. *Glenn*, 7 Mo. 573; *Trigg* v. *Taylor*, 27 Mo. 245; *Ivory* v. *Michael*, 33 Mo. 398; *Owings* v. *Arnot*, 33 Mo. 406; *Presbury* v. *Michel*, 33 Mo. 542; *Britton* v. *Dierker*, 46 Mo. 591. The insertion of such words as the law implies, is not making a material alteration. — *Smith* v. *Crocker*, 5 Mass. 540; *Langdon* v. *Paul*, 20 Vt. 217. In construing a contract, courts should look to the object the parties had in view, and should give such construction as will support and uphold the contract. — *Hovey* v. *Pitcher*, 13 Mo. 191; *s. c.* 16 Mo. 436; *Watkins* v. *Miserez*, 64 Mo. 597; *Gathwright* v. *Callaway*, 10 Mo. 664; *Loos* v. *Insurance Co.*, 41 Mo. 538; *The State ex rel.* v. *Insur-*

*ance Co.*, 44 Mo. 283 ; *Burnam* v. *Banks*, 45 Mo. 349 ;
*Bruner* v. *Wheaton*, 46 Mo. 363.

SENECA N. TAYLOR, for respondents : The alteration
of the bond after it was signed and delivered, without the
knowledge or consent of the sureties, discharged them
from liability upon it. — *Haskell* v. *Champion*, 30 Mo. 138 ;
*Evans* v. *Foreman*, 60 Mo. 450 ; *Capital Bank* v. *Arm-
strong*, 62 Mo. 66 ; *Fulmer* v. *Seitz*, 68 Pa. St. 237 ; *Moore*
v. *Lessee*, 4 Binn. 1.   The undertaking of a surety must
be strictly construed, and cannot be extended by implica-
tion beyond its express terms. — *Barker* v. *Berry*, 4 Mo.
App. 584 ; *Blair* v. *Insurance Co.*, 10 Mo. 561 ; *Moran* v.
*Martin*, 32 Mo. 443 ; *Miller* v. *Stewart*, 9 Wheat. 702.

LEWIS, P. J., delivered the opinion of the court.

This is an action on a building-contract made between
the defendant Fitzmaurice and Nicholas Wall, of the one
part, and the plaintiff of the other part, together with a
penal bond conditioned for the faithful performance by
Fitzmaurice and Wall, which is also executed by the de-
fendants Hannen and O'Connell as sureties.   The contract
and bond are as follows : —

" This article of agreement, made and entered into this,
the fourth day of August, A. D. 1874, by and between M.
G. Fitzmaurice and Nicholas Wall, composing the firm of
Fitzmaurice & Wall, parties of the first part, and the West-
ern Building and Loan Association, party of the second
part, all of the county of St. Louis, of Missouri.

" Witnesseth, that the parties of the first part, for them-
selves, their heirs and assigns, for and in consideration of
the covenants and agreements hereinafter contained, do
hereby agree with the party of the second part that they
will, at their own proper cost and charges, furnish all the
materials necessary for, and finish complete, a row of three
two-story brick dwelling-houses (except excavation, rubble
masonry, cut-stone work, brick-work), to be erected for

P. J. Woodlock, owner of shares of said association, on the south side of Adams Street, between Summit Avenue and —— Street, in the city of St. Louis, according to the drawings and specifications furnished by J. H. McNamara, architect and superintendent, the specifications being signed by them, the parties of the first part, and forming part of this agreement.

"And the parties of the first part agree to prepare properly and commence said work immediately, and push it on, so as to have said work completed on or before the first day of November next ensuing. * * * And further, the architect shall have the right to condemn any work or materials at any time during the progress of the work, or before its final completion and reception, which shall be found not in accordance with this agreement or his written instructions.

"And if such defects are not corrected, he shall have the right and power to have the same done, undone, and corrected to any extent he may find necessary, at the expense and charge of the said parties of the first part, their executors, administrators, and assigns ; or, at the discretion of the architect, the same shall be put at a fair valuation, according to the contract price, and fifty per cent of the value thereof deducted from the contract price ; and if the party of the second part or the architect shall find it necessary to make any changes or alteration from the original design, or in the mode of work, such change or alteration shall be made by the parties of the first part, and shall in nowise vitiate or annul this agreement, but being put at a fair valuation, shall be added to or deducted from the contract price, as the same may be ; such addition or deduction to be at the expense or for the benefit of P. J. Woodlock.

"And the parties of the first part agree to pay as forfeit to the party of the second part the sum of fifteen dollars per day for every day that the work shall be delayed from

completion (through them), over and beyond the time specified in this agreement, such forfeit being for the benefit of P. J. Woodlock; the parties of the first part being allowed for any time they may be delayed by the other contractors on the work, or by the party of the second part. * * * And the party of the second part agrees to pay for the faithful and entire completion of the work, and for material, to the entire satisfaction of the architect, the sum of forty-two hundred dollars ($4,200), * * * all claims, liens, and demands being settled, evidence to that effect having been presented to said party of second part.

" In testimony whereof, the said parties of the first part for themselves, and the president of the Western Building and Loan Association for the party of the second part, have set their hands, this the day and date first above written.

"FITZMAURICE & WALL.   [Seal.]

"B. LOEBLEIN.            [Seal.]

BOND.

" Know all men by these presents, that we, M. G. Fitzmaurice and Nicholas Wall as principals, and J. S. Hannen and Bernard O'Connell as sureties, all of the county or St. Louis, State of Missouri, *are held and firmly bound* in the sum of forty-two hundred dollars, to be paid ' The Western Building and Loan Association,' to the payment whereof we bind ourselves, our heirs, executors, and administrators by these presents. Sealed with our seals, and dated the fourth day of August, 1874.

" The condition of this bond is, that if the said M. G. Fitzmaurice and Nicholas Wall shall well and truly perform and keep all the covenants and agreements in part to be performed in the written contract dated herewith, between M. G. Fitzmaurice and Nicholas Wall, and the Western Building and Loan Association, for the entire completion, and the materials for their portion of the work of the three

two-story brick dwelling-houses, then this bond to be null and void, otherwise to remain in full force and virtue.

          " M. G. FITZMAURICE.  [Seal.]
          " NICHOLAS WALL.     [Seal.]
          " J. S. HANNEN.       [Seal.]
          " BERNARD O'CONNELL. [Seal.]"

For breaches of this contract and bond, the petition alleges that the contractors failed to have the work completed on November 1, 1874, and delayed the completion forty days beyond that date; and further, that they did not, at their own proper cost and charge, furnish all the materials for said work, but that, on the contrary, certain bills due to F. A. Fathman and the Eau Claire Lumber Company for materials furnished were left unpaid by the contractors; and mechanics' liens therefor having been perfected against the buildings, the plaintiff was compelled to pay the same in order to save the property.

Defendant Fitzmaurice made default. The defendants Hannen and O'Connell answered with a general denial, and set up affirmative defences as follows: That the bond sued on was altered in a material part thereof, after it was signed by the defendants and delivered, by interpolating the words " are held and firmly bound," without the consent of the defendants; and that, without the knowledge or consent of the defendants, the plaintiff and the owner, Woodlock, materially altered and modified the contract, in tearing down door-frames after they had been placed as called for by the plans and specifications, and substituting others of different form and greater cost, and in changing the finish under fifteen windows from stools and aprons, as called for, to panelling; and that such changes and alterations were not necessary to be made in order to complete such houses, but were made solely to gratify the taste of said Woodlock; wherefore, the defendants, as sureties, became and were

discharged.   The plaintiff replied with a general denial, and the cause was sent to a referee.

The testimony before the referee tended to show that the bond was altered by interlining the words "are held and firmly bound," but there was a conflict as to whether this was done before or after the signing.   The referee found, as matter of fact, that the alteration was made after the execution and delivery of the bond, and without the knowledge or consent of the defendants.   He further found that there was a delay of forty days in the completion of the buildings, beyond the time called for by the contract, and that this delay was caused by extra work, not called for in the plans and specifications, and but for which extra work the buildings would have been completed in due time.   He also found that there were changes in the design and mode of work which were not called for by the contract, plans, and specifications, and which were ordered by Mr. Woodlock, through the architect, but were not necessary ; that said changes increased the expenses of the buildings, and that the defendants Hannen and O'Connell had no knowledge of them at the time, and never assented thereto.   The referee found that the plaintiff was entitled to recover against the defendant Fitzmaurice, on account of the delay in completing the buildings, the sum of $600, and on account of the two lien-judgments described in the petition, which the plaintiff had been compelled to pay, the sum of $482.94 for each, making a total of $1,565.88.   He found, as a conclusion of law, that the plaintiff was not entitled to recover against the defendants Hannen and O'Connell, or either of them, and that judgment should be rendered in their favor.   The plaintiff's exceptions to the referee's report were overruled.

The first question brought to our attention by the plaintiff's exceptions is whether the alteration of the bond had the legal effect of discharging the sureties.   It may be pre-

mised that before the words " are held and firmly bound" were inserted, the language of the bond was amply sufficient to express the obligation intended.   In the words "to be paid," and " to the payment whereof we bind ourselves," etc., was implied all that could be conveyed by the interpolated words, and nothing more or less.   The alteration, therefore, was immaterial. ᵥ If it were material to the obligation assumed, there would be no question that, under the facts found by the referee, the sureties would be discharged. But as to the legal effect of an immaterial alteration, it is claimed that there has been a contrariety in Missouri decisions, and that the latest one (*Evans* v. *Foreman*, 60 Mo. 449), by indorsing the rulings in *Haskell* v. *Champion*, 30 Mo. 136, places all possible alterations on the same level. In *Haskell* v. *Champion*, a note signed by B. F. C. Champion and indorsed by the defendant Sullivan was afterwards altered by adding the words " & Co." to the name of the maker.   The Supreme Court held the alteration to be material ; but Judge Scott, in delivering the opinion, used this language :  " The law, in dealing with the subject of the alteration of written instruments, looks further than to the materiality or immateriality of the alteration.   Aware of the danger of countenancing the most trifling change, it has not permitted those intrusted with such instruments to alter them, and afterwards defend their conduct by alleging the immateriality of the alteration."   It must here be observed that, inasmuch as the court held the alteration in that case to be material, the effect of an immaterial alteration was not in issue.   A brief analysis will show that the supposed indorsement of Judge Scott's views, which afterwards appeared in *Evans* v. *Foreman*, was not applicable to his indiscriminate treatment of material and immaterial alterations, but to his general conclusions with reference to material alterations, however apparently unimportant.

In *The State to use* v. *Dean,* 40 Mo. 464, the name of the claimant mentioned in an idemnifying bond had been

altered from Francis to Franklin. It was held that the alteration was immaterial, and therefore did not avoid the instrument as to principal or sureties. Here, the present question was directly before the court, which was not the fact in either of the cases referred to.

In *Evans* v. *Foreman*, 60 Mo. 449, a note had been altered by the addition of the words "after due, ten per cent." It was not pretended that the alteration was immaterial. So, in that case also, the present question was not before the court. The only points to be considered were, *first*, as to the effect of a material alteration made in good faith, for the purpose of carrying out the intention of the parties; and *second*, as to the effect of the obligor's assent to the alteration after it was made. The court held that the alteration was not justifiable under the circumstances, because the party should look to the courts only for the reformation of an instrument, and not undertake the task himself. The effect of an immaterial alteration was of course foreign to the subject; but approving reference is made in the opinion to the doctrine of Judge Scott in *Haskell* v. *Champion, supra*. Reference is also made to the Supreme Court of Pennsylvania, in *Moore* v. *Lessee*, *etc.*, 4 Binn. 1, as being "in the same line of decision as our own court." In that case, the question was whether a vendee was bound to accept a deed, duly acknowledged, in which the consideration was left blank. It was contended that the deed was sufficient because the grantor's agent had authority to fill the blank after the acknowledgment. The court said: "Where a deed has been acknowledged before a magistrate appointed by law to take and certify the acknowledgment, in order that the deed may be recorded, the parties have no right to make the most trifling alteration. An altered deed is not the same that was certified." Here was a question very far apart from the one now in hand. It was made still more so, if possible, by the court's declaration that "the consideration is a material part of the

deed." The alteration then, if permitted, would have been material. Reference is also made to other Pennsylvania decisions as sustaining the views expressed in *Haskell* v. *Champion*; but in every one of them the subject-matter was a material alteration, and so declared to be. *Miller* v. *Gilleland*, 19 Pa. St. 119 ; *Neff* v. *Horner*, 63 Pa. St. 327 ; *Fulmer* v. *Seitz*, 68 Pa. St. 237. In *Miller* v. *Gilleland*, Gibson, J., says of an alteration in a bond, bill, or note : " When it is made by the voluntary act of the creditor, and increases or injuriously affects the responsibility of the debtor, whatever the motive for it, the security is gone. The rule is founded in policy, to protect the debtor from acts prejudicial to him, hard to be guarded against, and done in his absence and without his agency or consent ; but it is inapplicable to an alteration which leaves the legal effect of the instrument as it was before. Where there can be no wrong, the policy of protection has no place." The *syllabus* of this case says : " Though an alteration of a promissory note which does not disturb its legal effect does not avoid it, yet," etc.

From this review, it is apparent that the learned judge who delivered the opinion in *Evans* v. *Foreman* could not have intended that his approval of the doctrine in *Haskell* v. *Champion* should embrace what was rather loosely said therein about immaterial alterations. His quotation from Judge Scott's opinion does not include the passage quoted by us above. It is from the succeeding sentences, in which that able jurist points out the importance of impressing " on the minds of those who are in possession of such paper a sense of its inviolability."

The decision in *The State to use* v. *Dean, supra*, is therefore the only one of the Missouri series which is strictly pertinent to the present case. The authorities elsewhere are uniform in its support. Many of them are noted in 2 Parsons on Contracts, 718, where the author says : " If the alteration does not vary the meaning of the instru-

ment, or does not affect its operation, there is no good reason why it should make the instrument void. * * * We may therefore say that, in this country generally, no immaterial alteration would avoid an instrument. And that alteration which only does what the law would do — that is, only expresses what the law implies — is not a material alteration, and therefore would not avoid an instrument."
In *Hunt* v. *Adams*, 6 Mass. 519, Parsons, C. J., said: "In my opinion, it would be unworthy of the wisdom of the law to decide that an incautious interlineation of a word, which the same law would necessarily imply, should defeat the contract. Indeed, the assent of the party signing such contract, that the omission· of a word by clerical mistake, which the law will supply, might be cured by inserting such word, ought to be presumed, to protect him from the imputation of intentional fraud."

There is in this doctrine nothing which can endanger the rights of any contracting party. The question whether an alteration is material or immaterial is always one for the court to determine. The principles of judicial interpretation, as applied to written contracts, are too well defined to admit of any uncertainty or unfairness in submitting to the jury, in the case of material alterations only, the simple questions of fact, as to whether it was made, and, if so, at what time and by whose authority.

It results that the referee erred in his conclusion of law, to the effect that the sureties on the bond were released by an addition of words which expressed only what the law would already imply in the tenor of the instrument, without them.

The only other ground upon which it is assumed that the sureties were discharged is that relating to the changes in the work as it progressed. The mere fact that there were departures from the original plans and specifications could not operate such a discharge; because changes, under the direction of the architect, were expressly provided for in

the contract.   But the referee infers the release of the sureties from the fact that the changes made were not necessary, and that they increased the cost of the building. Not necessary for what?   The report does not say.   But the only form in which that supposed defence is presented by the answer is in the allegation that the changes were not necessary " in order to complete said building."   It must be presumed, therefore, that the referee sustains the defence in this shape.

It is nowhere assumed or admitted that the houses could not have been completed in exact accordance with the original plans and specifications.   If it was possible to so complete them, then no change of any sort from the plans and specifications could ever have been necessary in order to their completion.   It follows, according to the referee's rule, that no change at all was admissible without a violation of the contract and a release of the sureties.   But this result is repugnant to the provisions in the contract directly authorizing changes to be made, which is a sufficient demonstration of the absurdity of the interpretation.   The more rational construction is that such alterations might be made as should be found " necessary " by the architect; but whether necessary for the completion of the work, for the greater comfort of the future occupants, or for the gratification of the personal taste of the owner, was a matter of no concern to any one but the architect himself. The spirit of the contract throughout indicates a purpose to leave all such questions to the architect's discretion.   Of course it is not to be supposed that the architect would be permitted to abuse that discretion, by subverting the whole general plan of the structures and introducing a new style of buildings which was never contemplated by the contractors.   His changes, if any, should still be in keeping with the general style, extent, and purposes of the undertaking.   It is not pretended that there was any departure from this line in the present case.   The whole expense of

the changes made did not reach the sum of $250. As to the objection that additional cost was created by the alterations, that result was also clearly contemplated in the contract, and furnished no ground for a release of the sureties.

The Circuit Court erred in overruling the plaintiff's exceptions to the referee's report. Its judgment is reversed and the cause remanded. All the judges concur.