Bradbury, J.
The promissory note, the subject of this action, was executed, by Ida Newman, Martha Martin and George Martin, and delivered to the payee, J. C. Frampton. By successive indorsements, made in due course of business and before due, the note was transferred to defendant in error, Charles J. King, for value.
The makers of the note answered, contesting, among other defenses, its validity on the ground that the payee, after its delivery to him, and without their consent and knowledge, altered its date from June 22, 1890, to June 23, 1890. This was denied by the holder of the note, defendant in error, in his reply. Upon the issue thus arising, and after the testimony bearing thereon had been given to the jury, the holder of the note, defendant in error, requested the court to charge the jury as follows:
“If the jury find from the evidence that J. C. Frampton ■ did alter the date of this note from *277 June 22, 1890, to June 23, 1890, and further find that such alteration was only for the purpose of making the note bear its true date, and that such alteration did in fact make such note bear its true date, then such alteration is an immaterial alteration, and is not a good defense in this action,” but the court refused to so charge as requested, to which' refusal the plaintiff' at the time excepted.
Thereupon the court charged the jury upon this point as follows: “Now I say to you as matter of law in this case, gentlemen, that if you shall find from the evidence in this case that since the defendants signed the note sued upon in this action, the same has been altered by the payee thereof J. C. Frampton, without the knowledge or consent of either of these’defendants, by changing the date thereof from June 22, to June 23, that such alteration and change would, in law, amount to and would be a material alteration, and such alteration would render the note void as to these defendants, and would operate to discharge them from all liability thereon, although you may believe from the evidence that the plaintiff took the note in the regular course of business before due, for a valuable consideration and without notice of such alteration. ” To which charge as given the plaintiff at the time excepted.
The verdict and judgment were against the validity of the note. This judgment the circuit court reversed on the ground, among others, that the court of common pleas erred in refusing to charge the proposition requested, and in charging as it did upon the subject. This is the only question arising on the record of sufficient importance to require attention. That the date borne by a promissory note is a material matter is not seriously *278 contested. That it is material, we think, clear upon both reason and authority, the time of payment and the bar of the statute of limitations both depend upon its date. If the date of a promissory note may be changed one day, why not two days? If two days are not material, what number shall be held material? No satisfactory answer can be made. By changing its date the identity of the instrument is destroyed, and it is no longer the contract made by the parties. Bowers v. Jewell, 2 N. H., 543; Wood v. Steele, 6 Wall., 80; Inglish v. Breneman, 5 Ark., 377; Miller v. Gilleland, 19 Pa. St., 119; Brown v. Straw, 6 Neb., 536.
The authorities bearing upon this proposition are quite numerous, but to cite them further would be a work of supererogation.
If by reason of the alteration it has ceased to be the contract of the parties, the defense thus aris ing is available against an innocent purchaser Charlton v. Reed, 61 Iowa, 166; Cronkhite v. Nebeker, 81 Ind., 319; Haskell v. Champion, 30 Mo., 136; Wood v. Steele, 6 Wall., 80. Other authorities could be cited, but we do not think it at all necessary to support by an extended list of precedents, a proposition so obviously consistent with sound reason.
The defendant in error contends that, although the date which a promissory note bears may be a material matter, yet that as the note in controversy, according to the intention of all the parties to it, should have been dated June 23d, instead of June 22d, 1890, an alteration made by the payee honestly and in good faith after its delivery to him, that merely caused the instrument to express the date intended, even if done without the knowledge or consent of the makers, would not render *279 the note void. This contention finds support from reputable authorities. In Decker v. Franz, 7 Bush. (Ky.), 273, a promissory note had been dated in 1868, and the payee altered the date to 1869 by changing the figure “8” to “9” without the knowledge or consent of the maker. The court maintained the validity of the note on the ground that in its altered condition it conformed to the intention of the parties. The same doctrine is maintained in Mississippi. McRaven v. Crisler, adm’x, 53 Miss., 542; in Maine, Hervey v. Harvey, 15 Me., 357. In the latter case, however, great weight was given to the fact that the maker knew of the mistake, while the other parties did not, and the court' seemed to be of opinion that his attempt to avail himself of the alteration as a defense constituted a fraud upon the plaintiff. Ib., 359; Clute v. Small, 17 Wend., 238; Bowers v. Jewell, 2 N. H., 543.
Other cases, cited as sustaining this doctrine-do not support it to the extent claimed for them.
Thus, in Johnson v. Johnson's estate, 66 Mich., 525, which was an action to charge the estate of the principal maker of a promissory note for the debt evidenced thereby, a note had been given on October 23, 1876, for the balance due on account stated between the parties, but by mistake was dated October 23, 1875. The trial court found that the payee honestly,, and with no fraudulent intent, changed the “5" to a “6.” This was done without the knowledge or consent of the makers. After-wards the principal made two payments on the note, upon which circumstances some stress was placed by the court, although it does not appear that he knew of the alteration, when the payments were made. The wife of Johnson had signed the note as surety. The court seemed to be of opin *280 ion that the alteration changed the contract and discharged the wife, for the court said “the fact that Mrs. Johnson was not bound by the note would not discharge her husband for whom she signed as surety. ” The claim was allowed against the estate of the principal. The reasoning of the court is not very clearly set forth, but sufficient appears to show that the decision was quite as m.uch due to the theory that the original considertion, the account stated, would support the claim as to any other principle, the. court saying: “And furthermore the account stated, which was the foundation of the note would form a new basis of indebtedness.”
In some cases the alteration was sustained on the ground that it was made by an agent of the maker, or drawer, before delivery. Brett v. Pecard, Ryan & Moody, N. P., 37; Van Brunt & Slaight v. Eoff, 35 Barb., (N. Y.), 501. In other 'cases the note or bill of exchange was held valid, notwithstanding the insertion of a word without the knowledge of the maker or drawer, upon the ground that the word inserted was implied by the contents of the instrument.
The question raised by the instructions given and refused, relate solely to the effect to be given to a promissory note, after its date has been altered by the payee without the knowledg*e or consent of the maker.
The question is one of public policy. Doubtless, all minds will concur in the proposition that after a written instrument has been altered in a material matter, it no longer retains its identity; it is in fact a new contract, and imposes obligations and secures rights different from those it imposed or secured at its origin. Nor will any reasonable *281 mind contend that one of the parties to a written instrument may alter it without the consent of the others so that it will express anything not intended by the parties. The contention is, however, that it may be altered by one party, alone without the knowledge or consent of the others, if in its altered condition, it conforms to the intention of the parties, and the alteration was honestly made; and that, that being true, it may be enforced in its altered condition. The reasoning is that, as, in its changed condition, it expresses the intention of the parties, no injury has been done by the alteration. That, no doubt is true, in every case of an alteration in so far as it concerns the parties affected by it. If, in its altered state, it requires the obligor to do the particular thing he agreed to do, mo personal wrong has been inflicted on him. In this view of the matter the number and extent of the alterations are immaterial, for, however great and numerous they may happen to be, the instrument in its changed condition requires the' obligor to do just what he promised, and therefore, in good conscience, ought to do. The question, however, does not rest solely upon this aspect of the matter. Regard should be had to the policy of maintaining the integrity of written instruments; particularly those whose character, or nature, is such that their possession and custody belong to one party only.
" * Promissory notes are of this class. This policy, we think, denies to the custodian of a written instrument,- to whose possession its nature necessarily confides it, the power to alter its terms in any-material matter whatever, in order that it may conform to his notion of what the parties intended when it was executed.
*282 Deliberate tampering with written instruments by their obligees upon any pretense whatever should not be encouraged. If the right to do so in respect to any material matter should be established the principles by which satisfactory limits can be fixed to such right are not apparent. And if established, the nature of the right is such that probably it would be rarely exercised by the prudent and conscientious custodian of a written instrument in any ease; but instead it would be used chiefly if not altogether by those at whose hands its exercise would be fraught with peril to the integrity of written instruments, namely, those who, if not actually unscrupulous, are at least regardless of the rights of others.
Where, by mistake, a written instrument does not conform to the intention of the parties, and they cannot agree respecting the mistake and its correction, an adequate remedy has been provided according to the principles of "equity jurisprudence, by courts having jurisdiction to correct such mistakes where rules of evidence appropriate to establish the fact of mistake are prescribed and enforced.
In this state an alteration appearing on the face of a promissory note is presumed to have been made at or before the time of its execution, and the burden of proof is east upon one who seeks to establish the contrary; Franklin v. Baker, 48 Ohio St., 296, and this seems to be the rule that gen-' erally prevails throughout the United States. Bailey v. Taylor, 11 Conn., 531; Speake v. U. S., 9 Cranch, 37; Wickes v. Caulk, 5th Harr. & John., 36.
This presumption, that, an alteration appearing on the face, of a written instrument was made at or before its execution, is an additional and obvious *283 reason for denying to the custodian of any instrument to which the presumption applies, any authority to' change its terms in a material respect.
Otherwise a party by his own act may change the burden of proof and thus deprive the other party of a valuable right. Before the alteration was in fact made, should he have sought a correction through the medium of a court of justice, the burden would have rested upon him to establish the mistake by clear and convincing evidence. Having made the alteration, when, perhaps years after-wards,- he seeks the enforcement of the instrument in its altered state, this ex parte act, by its inherent force, raises a presumption that the alteration had been made at or before its execution, and thus the burden of establishing the fact that the alteration was made afterwards, is thrown upon the party who alleges it.
Ve are not at this time concerned as to the effect that a material, though innocently made, alteration of a written instrument may have upon the rights of the beneficiary in it, to recover on account of the original consideration moving between the parties, nor with his right to restore the instrument to its original condition and to enforce it when thus restored. Because the only question raised by the record relates to the right to recover upon the instrument itself in its altered condition; for the instructions given and refused by the trial court, to which exceptions were taken, bore upon this last question only.
The action was brought by an indorsee who sought a recovery upon the instrument itself. The makers denied that the instrument was the one they had executed, because its date had been altered without their knowledge or consent. This *284 was the is she. to which the instructions in controversy relate, and we think the court of common pleas laid down the correct rule upon the subject. The view we have adopted finds support among the text writers, and in the decisions of courts of high authority. Inglish v. Breneman, 5 Ark., 377; Charlton v. Reed, 61 Iowa, 166; Wood v. Steele, 6 Wall., 80; Haskell v. Champion, 30 Mo., 136-138; 1 Thompson on Trials, section 1395; Evans v. Foreman, 60 Mo., 449; Moore v. Lessee of Bickham & West, 4 Binn., 1; Miller v. Gilleland, 19 Pa. St., 119.
However, the judgment of reversal was not placed solely upon the ground of error in the charge given and refused, but rested, also, upon the action of the court of common pleas in excluding evidence offered by the defendant in error, plaintiff below, which evidence we think was material and competent.
Therefore, the judgment of reversal was correct and will be affirmed.

Judgment affirmed.