# Montgomery *v.* Crossthwait.

*Action on Promissory Note, by Indorsee against Indorser.*

1. *Negotiability, of note as affected by stipulation for payment of "costs for collecting."*—A stipulation in a promissory note to "pay costs for collecting, on failure to pay at maturity," does not destroy its negotiability.

2. *Alteration of note, as discharge of indorser.*—If the maker of a promissory note, which has been indorsed, afterwards adds "& Co." to his signature, thereby making it the signature of a partnership of which he is a member, and this is done without the knowledge and consent of the indorser, the latter is discharged, although the maker had no authority to bind the partnership by such signature.

3. *Same; waiver of discharge.*—If the indorser, with full knowledge of the alteration, afterwards waives protest and notice by indorsement on the note, and promises to pay it, this amounts to a waiver of the discharge, and operates a ratification of the alteration, though made without any new consideration.

4. *Burden of proof, as to when alteration was made.*—When the indorser of a promissory note pleads a material alteration of it, without his knowledge or consent, after he had indorsed it, but the note itself bears on its face no marks of alteration, the *onus* is on him to show that it was altered after he had indorsed it.

5. *Estoppel against indorser as to blanks filled up.*—If a note is indorsed by the payee before it is signed, and delivered to the maker to be signed in such a manner as will enable him to procure a loan of money for their joint benefit, the latter may sign his own individual name or the name of a partnership of which he is a member; and having signed the partnership name, the indorser is estopped to deny his authority.

6. *Stipulation in note for payment of "all costs of collecting."*—A stipulation in a promissory note to "pay costs for collecting, not less than ten per cent., on failure to pay at maturity," must be construed to mean a reasonable attorney's fee, since the parties are liable for court costs without an express stipulation,

7. *Estoppel against indorser by waiver of protest and notice, and promise to pay.*—A waiver of protest and notice, written on the back of a promissory note by an indorser, implies knowledge of all the paper then contains, and is such a recognition of its binding force as a contract as precludes him from afterwards making any defense based on matters then apparent on the face of the note, especially

90 553
90 553

90 553
93 195
93 339

90 553
95 466

90 553
96 193
96 290

90 553
98 608

90 553
100 504
101 207

90 553
104 573
104 582

90 553
107 299
109 418

90 553
121 390
121 409
121 428

90 553
124 306
124 642

90 553
127 295

90 553
138 365

90 553
142 400

[Montgomery v. Crossthwait.]

when such indorsement of a waiver is accompanied by a promise to pay the note.

8. *To what witness may testify.*—The maker of a note testifying as a witness, in an action against the indorser, that he was not indebted to the latter at the time the indorsement was made, but admitting that he had received a loan of stock to enable him to borrow money on its security ; he may state that the loan of stock *"was not considered a debt between us"* [them] , this being merely the equivalent of saying that there was no agreement that he should pay for the stock, and implying that it was to be returned *in specie* after he had used it for the specified purpose.

9. *Same.*—The holder of a note, testifying as a witness for himself, in an action against the indorser, who alleged a material alteration in the signature after his indorsement was made, may state that, on presenting the note to the defendant, at or about maturity, the latter *"examined the note thoroughly"* before indorsing on it a waiver of protest and notice.

10. *Proof of character.*—A witness, testifying as to the character of a person inquired about, "that his character was not good," can not further state "that he had heard a good many people say they would not believe him on oath ;" and having testified, on cross-examination, "that he had heard his character severely criticized by a great many people who resided in the community," he can not be allowed, on re-examination in chief, "to state what was the nature of the said criticisms he had heard.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Joseph D. Crossthwait against J. A. Montgomery, was commenced on the 9th January, 1888, and was founded on the defendant's indorsement of a promissory note for $3,000, which was dated at Birmingham, Ala., October 12th, 1887, and to which the name of *Percy R. Smith & Co.* was signed as maker. The note was in these words : "Sixty days after date, we promise to pay to the order of J. A. Montgomery three thousand dollars, value received, at First National Bank of Birmingham, Ala." The note contained, also, a waiver of exemptions of personal property, and a stipulation that "the undersigned shall pay costs for collecting above, not less than ten per cent., on failure to pay at maturity." The defendant's name was indorsed on the note, and above it the words : "Pay to the order of J. D. Crossthwait, 10–12, '87 ;" and a waiver of protest and notice was also indorsed on it.

The original complaint contained a single count, which described the note as made by Percy R. Smith & Co., indorsed by the defendant, with waiver of protest and notice, and containing a waiver of exemptions and a stipulation for the payment of the costs of collecting ; and claimed ten per cent. as costs for collecting. Six other counts were added by amendment, all of which were afterwards struck out except the sixth and seventh. The sixth count set out the note, the defendant's indorsement thereof, and his waiver of protest and notice ; and

[Montgomery v. Crossthwait.]

alleged that the note was "made by Percy R. Smith in the name of Percy R. Smith & Co.," that the defendant indorsed it "at the time of the execution thereof," and that his waiver of protest and notice was indorsed on the note " on the day of the maturity thereof." The seventh count alleged, in addition to the facts stated in the sixth, that the note was executed by Smith, "and indorsed to him by the defendant, for money jointly loaned to them at the time of the execution and indorsement thereof;" and each of these counts also claimed $300 attorney's fees, under the stipulation for the payment of costs of collecting.

To each of these counts, and to the entire complaint as amended, the defendant demurred, because there was no averment of suit against the maker, as required by statutory provisions regulating the liability of indorsers of non-negotiable promissory notes (Code, § 1778), and no excuse was shown for the failure to sue; and also to that part of each count which claimed an attorney's fee. The court overruled the demurrers, and the defendant then filed seven pleas. The first and second pleas, each, was a general denial of the averments of the complaint; and issue was joined on them. The third plea alleged a material alteration of the note by the maker, after the defendant had indorsed it, by changing the signature from Percy R. Smith to Percy R. Smith & Co., and that this was done without the knowledge or consent of the defendant; and issue was joined on it. The fifth plea denied the defendant's indorsement of the note, and was verified by affidavit; and issue was joined on it. The seventh plea set up the defense of usury, and it was admitted.

The fourth and sixth pleas were as follows: (4.) Defendant says, "that Percy R. Smith, the maker of the note on which this action is founded, came to him with said note signed by himself, said Percy R. Smith, and requested defendant to indorse the same for his accommodation, and defendant did so; that the said Smith, after defendant had so indorsed said note, carried said note to the plaintiff, and proposed to borrow some money from him on said note, when plaintiff said he would not loan him money on his note, but would on the note of Percy R. Smith & Co.; when said Smith then and there added to his signature the words '& Co.,' thereby changing said note from his individual note to that of Percy R. Smith & Co.; which was done after defendant had indorsed the same as aforesaid, and without the consent or knowledge of this defendant. And defendant further avers that plaintiff acquired said note from said Percy R. Smith, one of the makers thereof, for money loaned by him to said Smith, at a rate of interest

greater than eight per cent. *per annum*, and that plaintiff is not a *bona fide* holder of said note, having acquired it from the maker thereof upon a usurious loan." (6.) "Defendant further says, that after he had written his name across the back of the paper writing on which this action is founded, the same was altered materially by the maker of said paper writing, without the consent or knowledge of this defendant, by adding to the signature thereto the words '& Co. ;' and defendant further avers, that plaintiff acquired said note from said Percy R. Smith, for money loaned by him to said Smith at a greater rate of interest than eight per cent. *per annnm*, and that plaintiff is not a *bona fide* holder of said note, having acquired it from the maker thereof upon a usurious loan."

Several replications were filed to the third, fourth, and sixth pleas, of which it is only necessary to state the following, demurrers having been sustained to the others : (5.) "For a further replication to said *third and sixth pleas*, plaintiff says that, on the 14th day of December, 1887, said defendant, with full knowledge of all the facts now averred in his *third plea*, indorsed on said written instrument the following words : 'I hereby waive protest and notice of protest on the within note,' signed *J. A. Montgomery*, and at divers times, both before and after the maturity of said instrument, ratified the signature signed thereto, and the supposed alteration of said instrument by said Smith, and promised to pay it; and plaintiff avers that defendant has waived any right he may have had to aver and plead the supposed alteration of said instrument, and, by reason of his said waiver and ratification, is now estopped to deny that he is bound by his said indorsement." (8.) "For a further replication to said *fourth and sixth pleas*, plaintiff says that said defendant, on the 14th day of December, 1887, with full knowledge of all the facts now averred in and by said *fourth plea*," indorsed a waiver of protest on the note, promised to pay it, &c., following and repeating the words of the fifth replication, above copied. Demurrers to these two replications having been overruled, issue was joined on them.

"On the trial," as the bill of exemptions states, "plaintiff introduced evidence tending to show that, on the 12th October, 1887, Percy R. Smith, then a member of the mercantile firm of Percy R. Smith & Co., which was composed of him and E. E. Guenedon, as plaintiff knew, applied to plaintiff for a loan of $3,000; that plaintiff, after some negotiations, agreed to lend him the amount on a promissory note executed by Smith in said firm name, with defendant as surety, Smith stating that he would indorse the note; that the loan was to be for sixty days, and plaintiff was to retain $90 as interest; that

[Montgomery v. Crossthwait.]

thereupon the note sued on was filled out by one Mitchell, plaintiff's attorney and agent, who also wrote on the back of it the words, 'Pay to the order of J. D. Crossthwait, 10-12, '87,' and handed it to Smith in that condition, unsigned, for him to execute and have indorsed by defendant; that said Smith then left plaintiff's office, carrying said note with him, and returned the next morning, 13th October, bringing back the note, with defendant's name indorsed on it, but still unsigned by any one as maker, and sat down in plaintiff's office, and signed the firm name of Percy R. Smith & Co. to it, as the same now appears, and delivered said note to plaintiff, who thereupon paid him the money as agreed on." The plaintiff then proved the handwriting of the signatures to the note and indorsement, and offered them in evidence; and the court admitted them, against the objection and exception of defendant.

"It did not appear from the face of the note that there had been any alteration thereof, in its signature or otherwise, after its execution; and the plaintiff introduced evidence tending to show that there were never any alterations made in or on it, either at the time Smith delivered it to plaintiff, or afterwards. The plaintiff introduced, also, evidence tending to show that said note was executed, said loan obtained by Smith, and said note indorsed by defendant, for their joint benefit; that they had an agreement, prior to negotiating said loan, to borrow money from some one—from plaintiff, or any one else from whom they could get it; that a part of the agreement was that Montgomery was to indorse the note, but nothing was said as to how the note was to be signed, except that it was to be signed in such a way as to get the money; and that said note was executed and indorsed pursuant to said agreement." The plaintiff introduced, also, evidence tending to show that the money obtained by Smith on the note was equally divided between him and the defendant. The plaintiff's evidence further showed that, a day or two before the maturity of the note, when he spoke to defendant about it, the latter replied that it would be paid when it became due; that the note was presented to the defendant, for payment, when he said that it was entitled to three days of grace; that the note was again presented for payment on the 14th December, when the defendant again looked at it on both sides, and indorsed on it a waiver of protest and notice, as shown by the words indorsed; that defendant made several subsequent promises to pay the note, and made no objection to it, until January 3d, 1888, "when he said, in substance, that the note had been tampered with—that he had indorsed the note of Percy R. Smith, and not the note of Percy R. Smith &

[Montgomery v. Crossthwait.]

Co."—but again promised to pay it. Plaintiff, testifying as a witness for himself as to the presentment of the note to the defendant on the 12th December, when the latter claimed that the note was entitled to three days of grace, used the expression, "He looked at the note on both sides, *and examined it thoroughly.*" The defendant objected to the admission of the italicized words as evidence, "because it was a conclusion of the witness;" and excepted to the overruling of his objection.

The plaintiff's evidence tended to show, also, that said loan of money was not obtained for the benefit of Percy R. Smith & Co., nor was the firm name signed to the note with the knowledge or consent of Smith's partner. A witness for plaintiff, testifying to a presentment of the note to defendant on the 6th January, 1888, stated that he then promised to pay it, "and said nothing whatever about any alteration, but made mention of some stock in the East Birmingham Land Company which he had loaned to Smith, and that Smith had gone and borrowed money on it without his knowledge or consent, but his attorney thought he could get possession of the stock." Percy R. Smith & Co. made an assignment on the 30th December, 1887, and Smith left the State. His deposition was taken by plaintiff, and cross-interrogatories were filed by the defendant, one of which was in these words : " Were you not indebted to Montgomery at the time, for more than you let him have on the 22d October, 1887 ? Had he not loaned you some stock in East Birminghom, or some other company, to enable you to borrow money? and had you not pledged it to one of the banks at the time you let him have the money ? " The answer to this interrogatory was : "I was not indebted to Montgomery at the time, for more money than I let him have. I did not owe him anything. He had loaned me some stock, in East Birmingham, I think, or some other company, to enable me to borrow money; and I had pledged it with one of the banks. But, whether this was before or after we got the money from Crossthwait, I don't remember. *At any rate, the loan of the stock was not considered a debt between us.* It was a mere matter of accommodation between us, and was a favor to me personally, and not to the firm of Percy R. Smith & Co." The defendant moved to suppress the italicized words of this answer, on the ground that they were not responsive, were illegal and irrelevant, and were the statement of a conclusion merely; and he excepted to the overruling of his motion.

The defendant denied that he had ever indorsed, or agreed to indorse, the note of Percy R. Smith & Co., but said he had agreed to indorse a note for $3,000 for Percy R. Smith ; denied

[Montgomery v. Crossthwait.]

that there was any agreement between him and Smith to borrow money on their joint account, and said that the money paid to him by Smith was on account of indebtedness growing out of other dealings between them; that when he indorsed the note, which Smith brought to him, the latter at once sat down and signed his individual name to it; that he did not see it again until a day or two before its maturity, when it was presented to him, and he indorsed on it a waiver of protest and notice; that he did not discover until the 3d January, 1888, that the name of Percy R. Smith & Co. was signed as maker, and that he never afterwards promised to pay the note. The bill of exceptions states, also, that the defendant "introduced other evidence tending to show that, after he had indorsed said note, said Smith altered the same without his knowledge or consent, by adding '& Co.' to the signature, making it appear the signature of Percy R. Smith & Co. instead of Percy R. Smith individually," and that he introduced "other evidence tending" to corroborate his own testimony in other particulars.

"On the direct examination of J. P. Mudd, a witness for defendant, he testified that he knew the general character of Percy R. Smith in the community in which he had lately lived, that his character was bad, and that from such character he would not believe him on oath; and further, on cross-examination, that he had heard the character of said Smith severely criticized by a great many people who resided in said community. On re-examination of said Mudd, defendant asked him to state what was the nature of the said criticisms he had heard." The court sustained an objection to this question, and defendant excepted. "On the direct examination of John W. Read by the defendant, after he had answered that he knew the general character of said Percy R. Smith in the community in which he had recently resided, he was asked to state whether said character was good or bad, and answered that it was not good—*that he had heard a good many people say they would not believe him on oath.*" On motion of plaintiff, the court excluded the italicized words as evidence, and the defendant excepted.

The court gave the following charges to the jury, at the instance of the plaintiff, the defendant excepting:

1. The burden of proof is on the defendant to show that the note sued on was altered after he had indorsed it; and if the evidence fails to satisfy the jury that it was so altered, then they should not find that there had been such alteration.

2. On the question of the alteration of the note sued on, by adding "& Co." to the signature "Percy R. Smith," the bur-

[Montgomery v. Crossthwait.]

den of proof is on the defendant to show that such alteration was made after he indorsed the note.

3. If the jury believe from the evidence that there was an agreement between the defendant and said Smith to borrow money from the plaintiff, and that, to borrow money, defendant was to indorse a note, and Smith was to sign it in such a way as to enable him to get the money; and if they further believe from the evidence that defendant indorsed the note before it was signed by Smith, and that Smith afterwards signed it in the name of Percy R. Smith & Co., and in this condition discounted it to the plaintiff; then defendant is bound by his indorsement, and the jury must find for the plaintiff on all the issues except usury.

4. Ratification, like any other fact in this case, may be proved by circumstances; and if the jury find from the evidence that, after the defendant had indorsed the note, he saw and examined it, and read it over, and promised to pay it, and waived protest and notice on it; then these are all circumstances which the jury may take into consideration, in order to determine whether the defendant with full knowledge ratified the note.

5. The law presumes that the note was not altered after the defendant indorsed it, and the burden is on him to show, by a preponderance of the evidence, that the note was altered; and if he has failed to satisfy the jury, by a preponderance of evidence, that the note was altered, the jury will find this issue in favor of the plaintiff.

6. If the jury find from the evidence that the defendant indorsed the note before it was signed, and that it was executed and indorsed for the joint benefit of the defendant and Percy R. Smith, and that the defendant got one half of the proceeds thereof, and that the transaction relating to the indorsement and execution of the note was agreed on beforehand between them, and by which they were to divide the proceeds between them; then the plaintiff is entitled to recover in this action, as against the defendant.

7. If the signature to the note was altered, by adding "& Co." thereto; and if the defendant, with full knowledge of this alteration, promised to pay the note as thus altered; this would be a waiver and ratification of the alteration, and the defendant would be bound by his indorsement notwithstanding the alteration.

8. If the jury find from the evidence that the defendant took the note in his hands before it was due, and read it over, and knew that the name of Percy R. Smith & Co. was signed to it, and then made no objection to such signature, and then

[Montgomery v. Crossthwait.]

and there promised plaintiff that he would pay the same; this was a ratification on his part of the signature of Perry R. Smith & Co., and he could not afterwards be heard to deny his liability because the note was so signed.

9.   If the jury believe from the evidence that the defendant indorsed the note before it had been signed, and delivered it in that condition to Smith; and that Smith afterwards signed the name of Percy R. Smith & Co. to it, and discounted it to plaintiff for valuable consideration paid by him to Smith; then the jury must find for the plaintiff, on all the issues except usury, *unless* they further believe that, when defendant indorsed the note, or prior thereto, he expressly stipulated with or instructed Smith as to the mode in which the note should be signed, and that Smith violated such stipulation or instruction in signing the firm name.

10.   If the jury believe from the evidence that defendant indorsed the note before it had been signed, and delivered it in that condition to Smith; and that Smith afterwards signed the firm name to it, and discounted it to plaintiff; then they must find for the plaintiff on all the issues except usury, *unless* they further believe from the evidence that when the defendant indorsed the note, or prior thereto, he expressly stipulated with Smith, or instructed him, as to the mode in which the note should be signed, and that Smith violated such stipulation or instruction in signing the name of Percy R. Smith & Co.

11.   If the jury believe from the evidence that, when defendant indorsed the note, it had not been signed by Percy R. Smith as maker; and that Smith took the note to plaintiff's office, after it had been indorsed by defendant, and then signed to it the name of Percy R. Smith & Co., and then discounted said note to plaintiff, for $2,910; and that there was no agreement, express or implied, between defendant and said Smith, at the time defendant indorsed said note, or prior thereto, as to how the note should be signed—whether by Percy R. Smith, or by Percy R. Smith & Co.; then they must find for the plaintiff on all the pleas except usury.

12.   If the jury find from the evidence that the original signature to the note was "*Percy R. Smith*," and that "*& Co.*" was added thereto after the defendant signed the indorsement on it; and that the defendant, with knowledge of this alteration, consented to it, or waived any objection he might have made to it, and ratified the note as thus altered; then he would be bound by his indorsement.

13.   If the jury believe from the evidence that the defendant indorsed the note before it had been signed by any one, and delivered it to Smith while unsigned; and that Smith after-

36

[Montgomery v. Crossthwait.]

wards signed the name of Percy R. Smith & Co. to it; then they should find for the plaintiff on all the issues except usury, *unless* they also find that defendant, when he delivered the note to Smith, or prior thereto, expressly stipulated that the note should be signed by Smith in his individual name.

14.   Whether the jury will believe a witness or not, is a question for them, and not for the court; and they may believe the testimony of a witness, although his character is impeached, if, in their opinion, he has spoken the truth in this case; and they alone must determine whether he has so spoken the truth; and, in determining that question, they may look to all the circumstances or testimony in the case corroborating him, if there be such corroborating circumstances or testimony.

15.   Ratification by the defendant, of the manner in which the note was signed, after it was signed, and prior to the bringing of this suit, with knowledge on his part of the manner in which it was signed, at the time of such ratification, is as binding on him as if he had authorized the note to be so signed, or had authorized the signature to be altered by Smith so as to appear as it now appears.

16.   If the jury believe from the evidence that the note was unsigned when the defendent indorsed it, and that Smith afterwards signed the firm name of Percy R. Smith & Co. to, and then discounted it to the plaintiff; and further, that the money obtained from the plaintiff on said note was not for the benefit of Percy R. Smith & Co,, but for the individual benefit of said Smith, or for the joint benefit of him and the defendant; and that Smith's partner in the firm did not authorize him to sign the firm name to said note; then they must find for the plaintiff, on all the issues except usury, *unless* they further find from the evidence that, when defendant indorsed the note, or prior thereto, there was an agreement or understanding between him and Smith that the note should be signed by said Smith, and not by Percy R. Smith & Co.

17.   If the jury believe from the evidence that the defendant indorsed the note before it was signed by Smith, and delivered it to Smith with the understanding or agreement, express or implied, that Smith was to use it for the purpose of discounting it to plaintiff, and with the further understanding or agreement, express or implied, that Smith was afterwards to sign it in such way as to get the money on it; and that Smith afterwards signed the firm name of Percy R. Smith & Co. to it, and discounted it to plaintiff; then they must find for plaintiff on all the issues except usury.

18.   If the jury believe from the evidence that defendant indorsed said note before it was signed by Smith, and then

delivered it to said Smith with the understanding or agreement, express or implied, that he was to use it for the purpose of discounting it to plaintiff, and with the further understanding or agreement, express or implied, that Smith was to sign it in such way as to get the money on it; then, so far as defendant is concerned, Smith was authorized to sign the firm name to it, and the jury must find for the plaintiff on all the issues except usury.

19. If the jury believe from the evidence that, after defendant indorsed the note, he promised to pay it, and that he knew when he made the promise that the note was signed by or in the name of Percy R. Smith & Co.; then this amounts to a ratification of the act of Smith in so signing the note, whether it was signed by Smith individually when defendant indorsed it, and "& Co." was afterwards added, or whether it had not been signed at all when defendant indorsed it.

The defendant requested the following charges in writing, and duly excepted to their refusal :

1. "The burden of proof is on the plaintiff to establish to the satisfaction of the jury, by the evidence, all the material issues of fact presented by the pleadings."

2. If the jury believe from the evidence that the defendant indorsed the note, and then put it in the hands of Smith to negotiate a loan on it, and that it was unsigned when it was so indorsed and left with Smith; then the burden of proof is on the plaintiff to show to the satisfaction of the jury, by a preponderance of the evidence, that the agreement between defendant and said Smith was, that Smith was to sign the name of Percy R. Smith & Co. to the note.

3. Under the defendant's fifth plea, the burden of proof is on the plaintiff to show that the note was not altered after defendant indorsed it.

4. Under the defendant's fifth plea, on the question of the alteration of the note sued on by adding "& Co." to the signature of Percy R. Smith, the burden of proof is on the plaintiff to show that said alteration was not made after the defendant indorsed the note.

5. Even if the jury believe from the evidence that the defendant is bound by his indorsement of the note, he is not liable for attorney's fees for bringing or prosecuting this action.

6. The waiver of protest and notice by the defendant does not, of itself, operate to estop him to deny that he is bound by his indorsement of the note.

7. Admissions or representations made after a transaction is complete, which they did not invite or influence, can not operate as an estoppel; and applying this principle of law to

[Montgomery v. Crossthwait.]

the evidence in this case, neither the waiver by the defendant of protest and notice, nor promises made by him after the execution of the note sued on, made to the plaintiff or his agent, that he would pay it, can operate to estop the defendant from denying that he is bound by his indorsement.

8. The waiver of protest and notice by the defendant would not, of itself, nor promises of payment, though made with the knowledge that the signature to the instrument was Percy R. Smith & Co., nor such waiver and promises combined, would operate to estop the defendant from denying that he is bound by his indorsement of the note.

9. Under the sixth plea, the burden is on the plaintiff to show, by a preponderance of evidence, that the signature to the note was not altered, or, if altered, that it was so altered with the consent of the defendant.

10–12. If the jury believe "the witness Montgomery," they must find for the defendant. If the jury believe the evidence, they must find for the defendant. If the jury believe the evidence, "under the pleadings they must find for the defendant."

13. If the jury believe the evidence, they must find for the defendant "under the sixth count."

14. If the jury believe the evidence, they must find for the defendant "under the seventh count, unless they should believe from the evidence that the money loaned by plaintiff was loaned jointly to Smith and the defendant."

15. "Under the undisputed facts in the case," . . "the instrument sued on was not executed by Percy R. Smith & Co., or by any one authorized to bind said partnership."

16. "The mere waiver of protest and notice by the defendant is not any evidence even of a ratification by the defendant of the signature by said Smith of Percy R. Smith & Co. to said written instrument."

17. The plaintiff not being an innocent *bona fide* holder of the note, he is chargeable with notice of the undisputed fact, that it was not executed by Percy R. Smith & Co., or by any one authorized to bind said firm.

18. Under the fifth plea, the burden of proof is on the plaintiff to show to the satisfaction of the jury, by a preponderance of evidence, that the signature to the note was not altered, or, if altered, that it was so altered with the consent of the defendant.

19. Even if the jury believe from the evidence that the defendant promised to pay the note, after knowledge that the signature thereto was Percy R. Smith & Co., this, of itself, would not estop him from denying that he is bound by his indorsement of it.

Vol. xc.

[Montgomery v. Crossthwait.]

20. The mere waiver of protest and notice by the defendant does not amount to a ratification by him of the signature of Percy R. Smith & Co. by said Smith.

The court refused each of these charges, and the defendant duly excepted to the refusal of each; and the bill of exceptions then adds this recital: "When the foregoing *charge No. 9* was read to the jury, the court said it would give, and did give to the jury, in explanation of said *charge No. 9*, the following charge requested in writing by the defendant: 'I charge you, gentlemen of the jury, that if you believe from the evidence that defendant told Smith he would indorse Smith's note, this would be an express stipulation that the note should be signed with the individual name of Smith, and not with the name of Percy R. Smith & Co.'"

The adverse rulings of the court on the pleadings and evidence, the charges given, and the refusal of the several charges asked, are here assigned as error, making 50 assignments in all.

HEWITT, WALKER & PORTER, for appellants, argued and insisted on all the assignments of error, and cited the following authorities on the principal points:

(1.) A promissory note is a promise to pay a sum certain, without condition or contingency. The instrument here sued on promises to pay, in addition to the principal sum stated, all costs of collection, not exceeding ten per cent.; and this being both uncertain and contingent, destroyed the negotiability of the instrument.—*Jones v. Radatz,* 27 Minn. 240; *First Nat. Bank v. Larsen,* 60 Wisc. 206; 18 Central L. J. 399; 19 N. W. Rep. 67; *Fertilizing Co. v. Newman,* 60 Md. *Johnston v. Speer,* 92 Penn. St. 227; *National Bank v. Marlow,* 71 Mo. 618; *National Bank v. Gay,* 71 Mo. 627: *National Bank v. Jacobs,* 73 Mo. 35; *Altman v. Rittenshofer,* 36 N. W. Rep. 74, Mich.; *Altman v. Fowler,* 37 N. W. Rep. 708; *Iron Works v. Paddock,* 15 Pac. Rep. 574; *National Bank v. Bynum,* 84 N. C. 24; *Wood v. North,* 84 Penn. St. 407; *Garretson v. Purdy,* 14 N. W. Rep. 100; *Morgan v. Edmonds,* 11 N. W. Rep. 21; *Smith v. Morland,* 13 N. W. Rep. 852; *Bank v. Trenton,* 63 Mo. 38; *Harden v. Olsen,* 14 Fed. Rep. 705; 56 Mich. 6; 92 Penn. St. 227.

(2.) The instrument not being negotiable, the defendant was discharged from liability as indorser, by the failure to sue the maker to the first court, or to show a sufficient excuse for the failure to do so.—Code, 1876, §§ 2012, 2094.

(3.) The change in the signature to the note, after the defendant had indorsed it, was a material alteration, and dis-

[Montgomery v. Crossthwait.]

charged him from liability, unless it was made with his knowledge and consent.—*Holland v. Hatch*, 11 Ind. 497; 71 Amer. Dec. 363; 100 N. Y. 150; *Dobbins v. Rowley*, 76 Va. 544; *Glover v. Robbins*, 49 Ala. 219; *Toomer v. Rutland*, 57 Ala. 379; *Marshall v. Dresher*, 68 Ind. 359; *Cornell v. Necker*, 58 Ind. 425; *Goodman v. Eastman*, 4 N. H. 455; *Wade v. Whittington*, 1 Allen, Mass. 561; *Fay v. Smith*, *Ib.* 477; *Draper v. Wood*, 112 Mass. 315; *Wood v. Steele*, 6 Wall. 80; 39 Penn. St. 388; *Riddle v. Stephens*, 87 Amer. Dec. 181; *Trigg v. Taylor*, 72 Amer. Dec. 263; *Fuller v. Green*, 24 N. W. Rep. 907.

(4.) The several rulings of the court in reference to the burden of proof and presumptions, as to the time when the signature to the note was altered, are erroneous.— *Wilcox v. Henderson*, 64 Ala. 535; *Wilkinson v. Searcy*, 76 Ala. 176; *Lehman v. Kelly*, 68 Ala. 192; *Vandeventer v. Ford*, 60 Ala. 610.

(5.) A subsequent promise to pay, or waiver of protest and notice, did not constitute a ratification of the alteration, nor operate an estoppel, unless made with full knowledge of all the facts, and founded on a new consideration; or unless the holder was thereby injured, or misled to his prejudice.—*McCall v. Powell*, 64 Ala. 254; *Insurance Co. v. Savings Bank*, 63 Ala. 585; *Lewis v. Ford*, 77 Ala. 143; 27 N. W. Rep. 471; 42 N. W. Rep. 467; *Kelly v. Martin*, 34 Wisc. 525; 67 Mo. 19.

(6.) The stipulation for the payment of attorney's fees was not valid.—*Meyer v. Hart*, 40 Mich. 517; *Miller v. Gardner*, 49 Iowa, 234; *Bean v. Jones*, 8 N. H. 149; *Dow v. Updike*, 7 N. W. R. 857.

TALIAFERRO & SMITHSON, and JAS. A. MITCHELL, *contra.* (1.) The negotiability of the note was not affected by the stipulation for the payment of attorney's fees, or costs of collection.—1 Rand. Com. Paper, § 205; 1 Dan. Neg. Instruments, § 62, note; 2 Parsons on Notes and Bills, 147, 413; Tied. Com. Paper, § 28 *b*; *Sperry v. Horr*, 32 Iowa, 184; *Stoneman v. Pyle*, 31 Ind. 103, or 9 Amer. Rep. 637; *Hubbard v. Harrison*, 38 Ind. 323; *Proctor v. Baldwin*, 82 Ind. 370; *Smith v. Nat. Bank*, 29 Ind. 158; *Goar v. Banking Co.*, 11 Bush, Ky. 180, or 21 Amer. Rep. 209; 8 Nebr. 10; 10 Nebr. 284; *Seaton v. Scoville*, 18 Kans. 435, or 26 Amer. R. 779; *Overton v. Matthews*, 35 Ark. 242; *Trader v. Chidester*, 41 Ark. 242, or 48 Amer. R. 38; *Nickerson v. Sheldon*, 33 Ill. 272, or 85 Amer. Dec. 280; *Nat. Bank v. Ransom*, 1 Dak. 60; 7 Fed. Rep. 806; *N. A. Bank v. Ellis*, 2 Fed. Rep. 44;

[Montgomery v. Crossthwait.]

*Adams v. Addington,* 16 Fed. Rep. 89; 5 Dill. 482, or 9 Cent. L. J. 48.

(2.) That stipulation is reasonable and valid, and is binding on the indorser.—1 Rand. Com. Paper, § 205; 1 Dan. Neg. Instruments, § 62; 7 Wait's A. & D. 613; *Hubbard v. Harrison,* 38 Ind. 323; *Smith v. Nat. Bank,* 29 Ind. 158; *N. A. Bank v. Ellis,* 2 Fed. Rep. 44.

(3.) There was no material alteration of the note, nor was the liability of the indorser in any way affected by the addition to the signature, even if subsequent.—*Toomer v. Rutland,* 57 Ala. 379; *Railroad Co. v. Hurst,* 9 Ala. 513; *Huntington v. Finch,* 3 Ohio St. 445; *Railway Co. v. Bacon,* 15 Pick. 239; *Brown v. Jones,* 3 Porter, 429; *Glover v. Robbins,* 49 Ala. 219; 29 N. Y. 400; Bish. Contracts, §§ 755, 761.

(4.) If the alteration was material, and was made without the consent or knowledge of the defendant; yet his subsequent conduct amounted to a ratification of it, and he is now estopped from taking advantage of it.—3 Rand. Com. Paper, §§ 1774–76; *Weed v. Carpenter,* 10 Wend. 403; *Stewart v. Nat. Bank,* 40 Mich. 348; *Bank v. Middlebrook,* 33 Conn. 95; *Grimstead v. Briggs,* 4 Iowa, 559; *Pelton v. Prescott,* 13 Iowa, 567; 60 Mo. 449; 4 Allen, 447; 121 Mass. 157; 46 Me. 176; 32 Ill. 387; 67 Penn. St. 217; 2 Parsons on Notes & Bills, 565.

(5.) If the note was unsigned when indorsed by the defendant, and was delivered by him to Smith in that condition, the latter was authorized to fill up the blank signature in his discretion.—1 Amer. & En. Encyc. Law, 516; 2 *Ib.* 339; *Johnson v. Blasdale,* 1 Sm. & Mar. 17, or 40 Amer. Dec. 85; *Goss v. Whitehead,* 33 Miss. 213; 4 Dana, Ky. 191; 53 N. Y. 307; *Bank v. Huntington,* 3 Ala. 180; *Hall v. Bank,* 30 Amer. Dec. 685; *Bank v. Kimball,* 10 Cush. Mass. 373; *Davidson v. Lanier,* 4 Wall. 456.

(6.) The *onus* was on the defendant to show that the note was altered after he had indorsed it.—2 Dan. Neg. Instruments, § 1421; 3 Rand. Com. Paper, § 1785; *Barclift v. Treece,* 77 Ala. 532.

McCLELLAN, J.—One of the prominent questions presented by this record is, whether the stipulation in a promissory note to pay all costs of collecting, if not paid at maturity, destroys its negotiability. Upon no other question in the law, perhaps, are the authorities so irreconcilably, and at the same time so equally divided, both in respect to the number of adjudged cases, and the respectability of the courts upon either hand. The following cases maintain the commercial

character of notes which embody the stipulation referred to: *Stoneman v. Pyle*, 35 Ind. 103; *Pate v. Bank*, 63 Ind. 264; *Maxwell v. Morehart*, 66 Ind. 301; *Proctor v. Baldwin*, 82 Ind. 370; *Hubbard v. Harrison*, 38 Ind. 327; *Heard v. Bank*, 8 Neb. 10; *Sperry v. Horr*, 32 Iowa, 184; *Nickerson v. Sheldon*, 33 Ill. 373; s. c., 85 Amer. Dec. 280; *Dietrich v. Bayhi*, 23 La. An. 767; *Goar v. Banking Co.*, 11 Bush (Ky.) 180; *Sewing-Machine Co. v. Moreno*, 7 Fed. Rep. 806; *Seaton v. Scoville*, 18 Kans. 435; s. c., 26 Amer. Rep. 779; *Bank v. Sevier*, 14 Fed. Rep. 671; *Trader v. Chidester*, 41 Ark. 242; s. c., 48 Amer. Rep. 38; *Bank v. Rossumssen*, 1 Dak. 60; *Schlessinger v. Arline*, 31 Fed. Rep. 648; *Howenstein v. Barnes*, 5 Dillon, 482; *Adams v. Addington*, 16 Fed. Rep. 89.

And the following sustain the doctrine, that the stipulation involves such contingency and uncertainty as to the sum payable as to destroy negotiability: *Bank v. Bynum*, 84 N. C. 24; *Bank v. Gay*, 63 Mo. 33; *Goodloe v. Taylor*, 3 Hawks, 458; *Bank v. Marlow*, 71 Mo. 618; *Samstay v. Conley*, 64 Mo. 476; *Bank v. Jacobs*, 73 Mo. 35; *Wood v. North*, 84 Pa. St. 87; *Johnson v. Spier*, 92 Pa. St. 227; *Bank v. Larsen*, 60 Wis. 206; *M. F. & M. Co. v. Newman*, 60 Md. 584; *Mahoney v. Fitzpatrick*, 133 Mass. 151; *Jones v. Radatz*, 27 Minn. 240; *Bank v. Purdy*, 56 Mich. 6; *Altman v. Rittenshofer* (Mich.), 36 N. W. Rep. 74; *Iron Works v. Paddock*, 15 Pac. Rep. 574; *Farquhar v. Fidelity Co.*, 13 Phila. 473.

The question has never been determined in this State. It was mooted somewhat in the case of *Hanover National Bank v. Johnson*, at the last term, *ante*, p. 549, and dismissed with an indication on the part of the present writer unfavorable to the negotiability of such instruments. Such was the inclination of my mind at that time. A more careful investigation into the adjudged cases, and especially a more critical consideration of the reasons upon which the divergent conclusions of other courts are made to rest, have produced the contrary conviction, and lead me to adopt the view first advanced by the Indiana and Kentucky courts, and which has since received the sanction of all recognized texts which discuss the point. Tied. Com. Paper, § 28b; 1 Rand. Com. Paper, §§ 205, 206; 1 Daniel's Neg. Instr. §§ 62, 62a; Par. Bills & Notes, pp. 146–7; 2 Amer. & Eng. Encyc. of Law, p. 324.

The cardinal principle, that the sum to be paid must be certain in amount, and not dependent upon contingencies, is fully recognized and accommodated in this doctrine. It is true, the stipulation involves a contingency, in that there may or may not be any costs of collection to be paid, depending primarily upon failure to pay the note at maturity, and, sec-

[Montgomery v. Crossthwait.]

ondarily, upon whether the note should be paid, even after dishonor, without resort to attorneys, or legal proceedings. It is true, also, that the amount of such costs, if any, is uncertain. But it is fully assured that no costs will be incurred before maturity; and no costs will have to be paid at all, unless there is default in the payment of the sum promised at maturity, and the paper ceases by reason of that fact alone to be a circulating medium, performing in a sense the functions of money. So that as long as the paper, considered apart from the stipulation, would be negotiable, it will have that character, notwithstanding the stipulation. Looked at in this way, stipulated attorney's fees, and costs of collection after maturity, stand upon the same footing, as to contingency of liability therefor, and uncertainty as to the amount thereof, as do protest fees, attorney's tax fees, court costs and statutory damages, in the event a resort is had to legal remedies to enforce payment; and it is not conceivable why the former class of charges should destroy negotiability, while the latter confessedly do not.—*Stoneman v. Pyle*, 35 Ind. 103 ; *Goar v. Banking Co.*, 11 Bush (Ky.) 180. The Pennsylvania court has said, that a "promissory note is a courier without luggage, travelling on the wings of the wind, and should not be lumbered up " with provisions of the class under consideration. Another high authority has declared, that a stipulation for attorney's fees is " not luggage, but ballast, " and does not clog the circulation of the paper, but facilitates its progress. To further pursue the metaphor, it were, we think, more apt to say that the stipulation is neither luggage or ballast, and neither impedes or facilitates the flight of the paper through the transactions of commerce, since all persons are presumed to deal with it upon the assumption that it will be paid at maturity; but is for the well-being of the " courier, " when its monetary functions have been fully discharged, and its journey as a circulating medium has been brought to an end, by default in payment at maturity.

Our conclusion is, therefore, that the note sued on here was for a sum certain, the payment of which depended upon no contingency ; and being payable at a bank, it is commercial paper within sections 2094, 2112 and 2113, Code of 1876, and sections 1756 and 1778, Code of 1886. The demurrer to the complaint, which proceeded on the contrary assumption, was properly overruled.

We understand the law to be well settled, that a material alteration of a promissory note, by any of the parties thereto, discharges from liability thereon all other parties not consenting to or authorizing such alteration ; and this without regard to

whether the alteration is apparently or presumably to the benefit or detriment of the parties objecting. Courts can not undertake to say that a party would have made the contract as altered, and thus make it for him, merely because its terms are more favorable to him than those embodied in the original instrument, any more than a like conclusion could be justified where the alteration imports additional liability. In the one case, no less than in the other, the altered paper is not the contract which the party has made; and in neither case can the courts declare it to be his contract, or enforce it as such. The law proceeds on the idea, that the identity of the contract has been destroyed—that the contract made is not the contract before the court—that the party did not make the contract which is before the court; and so adjudging, it can not go further and hold him bound by it, on speculations, however probable and plausible, that he would or ought to have entered into the altered agreement, because it involved less liability than the original and only paper executed by him. There are some expressions in the books to the contrary. They will, for the most part, and certainly so far as the adjudications of this court are concerned, be found in cases where the change was prejudicial to the party complaining; and this fact is made one of the reasons for the decision against liability, though it might as well have been rested entirely on the abstract fact of alteration. Thus, in the case of *Toomer v. Rutland*, 57 Ala. 379, reference is made to the prejudicial character of the alteration; but the conclusion there reached might better have been based solely on the change in the legal identity of the contract—a doctrine there fully recognized *arguendo*—entirely regardless of the effect upon the promisor. It was not decided in that case that an alteration favorable to the party seeking to avoid the instrument would *not* release him. The sounder doctrine, and certainly the one supported by the overwhelming weight of authority, is that stated in *Bellinger & Ralls v. Anderson*, 87 Ala. 334, and there applied to a surety: that any material alteration, by one not a stranger to the paper, whether injurious or not, avoids the contract as to all parties not consenting. It is enough that, if the instrument were genuine, it would operate differently from the original; or, as otherwise expressed, avoidance will result, "if the alteration is one which causes the paper to speak a language different in legal effect from that which it originally spoke."—*Bank v. Douglas*, 31 Conn. 170, 181 ; *Gardner v. Walsh*, 5 El. & Bl. 82 ; *Morrill v. Otis*, 12 N. H. 466 ; *Reeves v. Pierson*, 23 Hun, 185; *Humphreys v. Guillow*, 13 N. H. 387; *Dickerson v. Miner*, 43 Iowa; *Lunt v. Silver*, 5 Mo. App. 186 ; 2 Pars.

[Montgomery v. Crossthwait.]

Bills & Notes, 551–564; Tied. Com. Paper, § 394; 3 Rand. Com. Paper, § 1743; and many other authorities.

Even were the rules of law otherwise, we are unable to see how appellee could be benefitted by it. The appellant might, for very good reasons, have preferred to indorse for Percy R. Smith, in preference to Percy R. Smith & Co., for aught this or the trial court could know. It may be, for instance, that Smith had abundant property to pay his individual debts, while the firm of Smith & Co. may be wholly insolvent, so that the indorser for Smith individually would be saved harmless, on a marshalling of assets, while the indorser for Smith & Co., forced to look to firm assets, with only the excess of individual assets after paying individual liabilities, would lose his claim in whole or in part. So that it could not be safely assumed that the change from "Percy R. Smith" to "Percy R. Smith & Co." was beneficial to the indorser.

That the alteration was a material one, we have no doubt. The considerations just adverted to demonstrate that it was; and the authorities are full to the point, that the addition of other names as makers discharges parties already bound by the paper.—Cases *supra;* and *Walsh v. Jewell,* 21 Ohio, 170; *Davis v. Coleman,* 7 Ind. 424; *Hall v. McHenry,* 19 Iowa, 511; *Henry v. Coates,* 17 Ind. 161; *Broughton v. Fuller,* 9 Vt. 373; *Bellenger & Ralls v. Anderson,* 87 Ala. 334. The effect of adding "*& Co.*" was to make that partnership and the members of it, on the face of the paper, parties to it, whereas only one member of that firm, and he in his individual capacity alone, was a party to the original contract. The precise alteration here involved was adjudged to be a material one in the case of *Haskell v. Champion,* 30 Mo. 136.

Nor is it of moment in this connection that, in point of extraneous fact, the firm of Smith & Co. was not bound by the signature, because of a want of authority in Smith to sign the firm name to the paper. The court is to determine the materiality of the alteration by an inspection of the instrument. Evidence *aliunde* will be received to show the fact of alteration, and, in a proper case, also that the alteration was in accordance with the intention of the parties; but, with these exceptions, the court can not, on the question of materiality, look beyond the paper. Considering the original by comparison with the altered paper, it is to determine whether the latter, assuming its genuineness, evidences a contract materially variant from the former. It can make no difference that the parties, the addition of whose names constitutes the alteration, are not in fact bound by the instrument. On the face of it they are bound. On its face, therefore, the contract is not

identical with the original. The legal identity of the first is destroyed, and parties not consenting thereto are discharged. Thus, in *Haskell v. Champion, supra,* it was ruled that the addition of "*& Co.*" to the maker's name discharged the indorser, although there was no such firm, but the maker was a member of another firm. Here, the firm clearly was not bound; nobody was in fact bound but the original maker; but, on the face of the paper, not only he, but a firm of which he was a member, was liable. The question of materiality was determined not by the outside fact, but by the paper, and other parties were held to be discharged.

To the pleas which set up the alteration we have been discussing it was replied, that the defendant—indorser—with full knowledge of the alteration indorsed and signed a waiver of protest and notice of protest on the note, "and at divers times, both before and since the maturity of said instrument, ratified the signature signed thereto, and the supposed alteration of said instrument by said Smith, and promised to pay it;" and also, generally, that the defendant had waived the right, and is now estopped to plead said alteration. Eliminating the legal conclusions alleged in these replications, there yet remain two averments of fact—that, with full knowledge of the alteration, the defendant waived protest and notice by indorsement of the note over his own signature, and promised to pay the same. This, in our opinion, was a good replication to the matter pleaded, and the several demurrers to it were properly overruled. These facts, standing alone, constitute a waiver of the discharge otherwise operated by the alteration, or the adoption of the act of Smith in making the alteration. The authorities are uniform to the point, that such an alteration may be made by the consent of the parties.—*Ravisies v. Alston,* 5 Ala. 297; *Hill v. Nelms,* 86 Ala. 442; Tied. Com. Paper, § 396; 3 Rand. Com. Paper, § 1766; 2 Daniell on Neg. Instr. § 412; 2 Parsons Bills & Notes, p. 565. And it is a very general proposition, that an act which may be authorized, or consented to *in limine,* may be effectually ratified after it has been performed, and *e converso.*—*Knox v. Armstead,* 87 Ala. 510; *Bank v. Gay,* 63 Mo. 33, 39; *Bank v. Warren,* 15 N. Y. 577. At least, it is certain that an alteration, such as is shown here, may be ratified by the innocent party affected by it, so as to bind him to all intents and purposes, as if he had fully authorized it in the first instance. *Bank v. Rising,* 4 Hun, 793; *Huntington v. Ballou,* 2 Lans. 120; *Kershaw v. Cox,* 3 Esp. 246; *Hazard v. Spears,* 2 Abb. App. 353; *Kilkelly v. Martin,* 34 Wis. 525; *Stewart v. Bank,* 40 Mich. 348; *Goodsped v. Cutler,* 75 Ill. 534. And efficient ratification will be implied from facts such as are set forth in

[Montgomery v. Crossthwait.]

these replications.—*Evans v. Foreman*, 60 Mo. 449; *Bell v. Mabin*, 29 N. W. Rep. 331; *Stewart v. Bank, supra; Grimstead v. Briggs*, 4 Iowa, 559; *Bank v. Middlebrook*, 33 Conn. 95; *Coriss v. Tattersal*, 2 Man. & G. 590; *Weeds v. Carpenter*, 10 Wend. 403; *Barnes v. Jewell*, 2 N. H. 543.

Whether a new consideration is essential to support the contract thus made by ratification, there is some conflict of authority. The courts of Kentucky and Minnesota hold, that a new consideration is necessary.— *Wilson v. Hayes*, 42 N. W. Rep. 467; *Warren v. Fant*, 79 Ky. 1. But a great majority of courts of last resort, if indeed not all of them, except in the States named, sustain the contrary doctrine. *Bank v. Warren, supra; Pelton v. Prescott*, 13 Iowa, 567; *King v. Hunt*, 13 Mo. 97; *Prouty v. Wilson*, 123 Mass. 297; *Goodspeed v. Cutler*, 75 Ill. 534; *Stewart v. Bank, supra*. With respect to this question, we adopt the language and conclusion of the Missouri court, in a strictly analogous case : " There have been many refinements adopted about this doctrine of ratification ; refinements which savor more of subtlety than of sound judgment. With some exceptions, not necessary to be adverted to here, the proposition is, however, undoubtedly correct, that *he who may authorize in the beginning, may ratify in the end*. . . . And there is, therefore, no force in the point urged on our attention, that there should have been a new consideration in order to attach validity to a confirmatory act. No independent consideration is required in the case of an accommodation indorser, surety, &c., in the first instance ; and it is difficult to see why any thing more should be required on subsequent sanction than on original assent."—*Bank of Trenton v. Gay et al.*, 63 Mo. 39.

Coming now to the bill of exceptions, it is first to be noted, that what we have said in relation to ratification of the alleged alteration, and to the effect that ratification may be inferred or implied from circumstances, and need not be supported by a new or distinct consideration, when applied to charges 4, 7, 8, 12, 15 and 19, given at the request of the plaintiff, and charges 8, 16 and 19, asked by the defendant and refused, serves to determine the exceptions reserved to the action of the court in respect thereto, against the appellant.

The instrument sued on did not bear on its face any evidence of having been altered at any time. The burden of proving that it had been altered after indorsement was, therefore, upon the party who relied on that fact to defeat recovery against him. It follows that appellant's exceptions to charges 1, 2 and 5, given at the instance of plaintiff, and to the refusal of the court to give charges 1, 2, 3, 4, 9 and 18, as requested by defendant, which proceed on the theory that it was upon

[Montgomery v. Crossthwait.]

the plaintiff to disprove the alleged alteration, are untenable. 2 Daniel's Neg. Instr., § 1421; 3 Rand. Com. Paper, § 1785; Tied. Com. Paper, § 393; *Barclift v. Treece*, 77 Ala. 528.

Charge numbered 5, given for plaintiff, is faulty in one of its clauses, when considered alone, in that it might be construed to authorize the jury to find according to the preponderance of evidence, regardless of whether such preponderance was sufficiently great to reasonably satisfy their minds. This fault is obviated in other portions of the instruction, where it is said the defendant must *satisfy the jury*, by a preponderance of the evidence, that the fact in issue is as he alleges it to be; and even were this otherwise, the appellant could not complain, for the error, if any, in the charge is favorable to him.—*Mays v. Williams*, 27 Ala. 267; *Jarrell v. Lillie*, 40 Ala. 271; *Vandeventer v. Ford*, 60 Ala. 610.

There was evidence which tended to show that the note was indorsed by the defendant before it was signed, and was delivered to Smith to be signed in such a way as would enable him to get the money on it for himself and Montgomery. We hold that this agreement, if it existed, authorized Smith, so far as Montgomery was concerned, to sign the firm name of Percy R. Smith & Co. to the paper; since, without any agreement, Smith had the right to fill up the blank by inserting his own name as maker; and to accord any operation to the agreement, it must be construed into a consent by the defendant to subscribing of the name of Smith's firm. Whether Smith had, as between himself and his co-partner, the right to so sign, is immaterial. Montgomery's consent to the thing that was done, estops him now to object to its having been done, whether Smith, in point of legal fact, had the power to do it or not. Charges 3 and 18, given for the plaintiff, find justification in these considerations.

We construe plaintiff's charge numbered 6 to assert, that if the note was made on the joint account of Smith and Montgomery, and was indorsed by the latter before it had been signed, but afterwards, in pursuance of their agreement, executed by attaching thereto the name of Percy R. Smith & Co., Montgomery, having received his share of the proceeds, is bound by his indorsement. So construed, if this instruction has an infirmity, it lies in its being too favorable to the defendant. The fact postulated, that the signature of Smith & Co. was attached in consonance with the previous understanding between Smith and Montgomery, would, of itself, and wholly irrespective of Montgomery's interest in the money borrowed, be quite sufficient to bind him. The appellant can take nothing on his assignment of error directed against this charge.

[Montgomery v. Crossthwait.]

Charges 9, 10, 11, 13 and 16, for plaintiff, as modified by the explanatory charge given in connection therewith, are correct expositions of the familiar rule of law applicable to the filling of blanks left in promissory notes at the time of indorsement.

The stipulation to " pay all costs of collecting, not less than ten per cent.," must be construed to refer to other than court costs, since the parties bound on the paper are liable for those without any agreement to pay them.   Other costs of collection ordinarily consist of attorney's fees ; andthe stipulation may be interpreted as if it provided for the payment of ten per cent. attorney's fees, or a greater amount than that, if expended reasonably and properly in realizing on the note.   Stipulations to pay a given per cent. for the services of attorneys are held to import liability for reasonable compensation for legal services rendered in that behalf, not in excess of the amount limited.   We do not think the stipulation here is for more than this ; and hence that it can be enforced to this extent in the present action.   Charge 5 asked by defendant was well refused.

It would unduly extend this opinion, and serve no good purpose, to discuss the remaining charges requested by the appellant in detail.   Enough has already been said, we think, to show that they severally are either affirmatively bad, as stating propositions which are unsound, or are abstract, or misleading, or invasive of the province of the jury.   Not a few of them, for instance, are addressed to the question of defendant's estoppel to rely upon the alleged alteration, and set forth that this, that and the other fact does not estop him to avail himself of it.   This matter of estoppel was not nearly so prominent in the case as the question of ratification and promise to pay after knowledge of the alteration ; and the tendency of all these charges was to mislead the jury into discharging the defendant, because he was not technically estopped to set up this defense, although they may have been fully satisfied that the defendant, being let in to make this defense, had utterly failed to sustain it with evidence.

Moreover, we are by no means prepared to say that the proposition of these charges is absolutely correct.   On the contrary, we apprehend that the indorsement of a waiver of protest and notice of protest on a paper, as shown here, implies knowledge of all the paper contained at that time, and was such a recognition of its binding force as a contract as precludes the party from making any defense based on matters then apparent upon the face of the instrument ; and certainly such would be the effect when the indorsement of the waiver is accompanied by a promise to pay the note.

[Montgomery v. Crossthwait.]

We have examined the trial court's rulings on evidence to which exceptions were reserved, and find no error in them.

The statement of the witness Smith, that the loan of stock by Montgomery to him, to enable him to borrow money upon its security, "was not considered a debt between us," considered with the context of his answer to the interrogatory, was no more or less than to say that there was no agreement that he should pay Montgomery for the stock; the clear implication being that, when it had performed the purpose of the loan— that is, had been used as collateral by Smith—it should be returned *in specie* to Montgomery.

The statement of plaintiff, made as a witness, that the defendant, at a certain time, "examined the note thoroughly," the issue being whether he knew that it was signed as by Percy R. Smith & Co., was but a " short-hand" rendering of the facts involved in reading the paper and ascertaining all of its contents. It was properly admitted.— *Woodstock Iron Co. v. Roberts*, 87 Ala. 436; *Perry v. State, Ib.* 30.

It has become to be a familiar rule of law in this State, that a witness as to character may, on cross-examination, be interrogated as to what he has heard in the community touching the character of the party inquired about. This is to afford a test of the value of his evidence in chief—to show that his conclusion as to the reputation in issue, and which rests upon the estimation of the community, is not supported by the expressions of that estimation, and thus to weaken its force. Such expressions can not be given in evidence by the party whose witness is being examined, and who testifies that he knows the character under inquiry. He must state what that character is, as upon his own knowledge, and is not allowed to substitute for his knowledge the means or sources of it. On these principles, the action of the City Court in refusing to allow the witness Mudd to testify to the character of the adverse criticism he had testified on cross-examination to having heard on the character of Smith, and in excluding the evidence of Read, given in chief, that " he had heard a good many people say they would not believe Smith on oath," was unobjectionable. The ruling as to Mudd's testimony, moreover, may be sustained on the further ground, that it involved no injury to appellant, in that he had already deposed to the character of the criticism which he had heard with respect to Smith's character, to the effect that they were " severe" expressions condemnatory of Smith.

We find no error in this record, and the judgment of the City Court is affirmed.