[No. 864.   Decided May 24, 1893.]

SECOND NATIONAL BANK OF COLFAX, *Appellant*, v. T. S. ANGLIN, *Respondent*.

PROMISSORY NOTES — PROVISION FOR ATTORNEY FEES — EFFECT UPON NEGOTIABILITY.

A condition in a promissory note providing for the payment of attorney fees in the case of a suit to enforce its collection, does not affect the negotiability of the note.

*Appeal from Superior Court, Whitman County.*

*Chadwick & Fullerton*, for appellant.

The opinion of the court was delivered by

HOYT, J.—This action was brought to recover an amount alleged to be due upon a promissory note made by the respondent, which it was alleged had been endorsed by the payee to the plaintiff before maturity for a valuable consideration.   Such note was substantially in the following form:

"Five months after date, without grace, for value received, I promise to pay to J. B. Standley, or order, at Colton, Wash. Ter'y, the sum of $213.00 with interest thereon at the rate of 1¼ per cent. per month from maturity until paid.   Principal and interest payable only in U. S. gold coin, and in the event of a suit to enforce the collection of this note or any portion thereof, I further agree to pay the additional sum of $20.00 in like gold coin, as attorney's fees in said suit."

The rulings of the lower court during the progress of the trial were based entirely upon the theory that this note was not a negotiable one.   Assuming that basis to be correct, it may be that such rulings could be sustained, although as to that question we now express no opinion. But it is clear that if that basis was not correct, such rul-

ings cannot be sustained and the judgment rendered in pursuance thereof must be reversed. The only question, therefore, which we shall consider it necessary to discuss is as to the negotiability of this note. It is claimed that the provision therein, for the payment of an attorney's fee in case of suit, has the effect to take from such note its negotiable character. Upon the question of negotiability of notes containing provisions similar to this one, there has been much controversy, and the. decisions of the courts in reference thereto are totally irreconcilable. The only reason suggested why notes of this kind are not negotiable is, that by reason of such provision the amount thereof is made uncertain, and that as certainty in amount is one of the necessary conditions of negotiable paper, such uncertainty destroys such negotiability.

Upon principle we do not think that such a condition should be construed to have such an effect. Such clause has no relation to the amount stipulated to be paid in the note, if such payment is made in accordance with the terms thereof. It has absolutely no effect upon the amount which the holder may rightfully demand at the maturity of the note, nor upon the amount which it will be necessary for the maker thereof to tender at such maturity as a full discharge of his liability thereon. It is only upon the conditions of such note being broken and the promise to pay violated that this condition has any force whatever, and even then it has no force until an action has been brought to enforce the liability growing out of such violation of the conditions of the note. After maturity a note without any such condition loses the protection awarded to negotiable paper by the rules of the law merchant; therefore, such condition after it becomes effective does not materially change the rights and obligations of the parties interested in such note. It seems illogical to hold that the force of a positive promise to pay a definite sum at a defi-

nite time shall be at all affected by a condition that in case of the violation of such promise a penalty may be imposed upon the promisor.    The contingency that upon the violation of his promise the maker of a note may be called upon to pay an amount over and above that which he had promised to pay, ought not to have any effect upon such promise.    We think it would be more logical to hold, if it was necessary so to do to preserve the integrity of the absolute promise contained in the note, that the additional sum to be paid upon the bringing of suit was an incident to the suit rather than to the note itself; that the condition should be held to be in the nature of a stipulation that the law as to costs of court should be deemed to be such that in that particular case it should include either the definite sum provided for as an attorney's fee, as in the note in question, or such a reasonable sum as the court might allow, as is often provided in notes of this kind.

· The real object of such condition is to enable the holder of the note, if he is obliged to bring suit thereon, to recover such a sum by way of costs or attorney's fees as will reimburse him in whole or in part for the expenses which he may incur by reason of being compelled to go into court to collect such note.    Such being the case, it seems to us that penalties of this kind may logically be considered as part of the costs incident to the action, and as being as far separated from the principal promise to pay contained in the note as are the costs which are allowed by the statute to the prevailing party.    If the legislature should provide, that in all cases of suits upon promissory notes the prevailing party could recover, in addition to the other items of costs, such a sum as attorney's fees as the court should adjudge reasonable, it could not be successfully contended that such a provision would not have force, nor would it be held that by reason thereof the negotiable character had been taken from all notes coming within the terms thereof.

The reason why such legislation would have no effect upon the note itself would be because the costs allowed thereby were incident to the suit, and not to the contract for payment, and there would seem to be no logical reason why the stipulation of the parties that such items of costs might be taxed by the court should have any greater effect upon such promise to pay.

Costs of this kind are looked upon with disfavor by some of the courts, and nearly all reserve to themselves the right to control such costs, while few or none of them would think of controlling the effect of a direct promise to pay in the note itself. This tends to show that the courts have been disposed to look upon these costs not as an integral part of the promise to pay contained in the note, but rather as a stipulation for the payment of costs incident to a suit brought thereon. In our opinion, such costs when thus controlled by the courts should not be considered as unconscionable and oppressive. On the contrary, we think that the right to insert such provision in notes without, in any manner, affecting their character, when so controlled by the courts, will tend to the best interests of the borrowing classes. Those loaning money are usually in a condition to exact such terms from the borrower as they deem satisfactory, and if they are deprived of the right to stipulate for reimbursement for expenses incurred in case suit has to be brought upon the note, they will insist upon such additional rate of interest being provided for therein that the contingency of the outlay incident to a collection thereof by suit may be provided for. It will follow that everyone borrowing money will have to pay the increased rate of interest sufficient to meet such contingency, and this regardless of the fact that such contingency may never arise. One who loans money concludes that he will be satisfied with a certain rate of interest for the use of his money, and the risk incident to loaning it, and, if he can be assured

of the repayment of the principal and such rate of interest, and, in the contingency that he has to incur expenses in the collection thereof, will be reimbursed therefor, he will be content to negotiate loans stipulating only for such rate of interest; but if he cannot be assured of such reimbursement of expenses he will be sure to protect himself by demanding an increased rate.

It follows that, upon principle, the provision under consideration should be held to have no effect upon the direct promise to pay contained in the note, and that notwithstanding such condition the paper should receive the protection of the rules of the law merchant.   The authorities upon the subject, as we have already suggested, are inharmonious, and a very large array of cases could be cited to sustain the negotiability of notes of this kind, and substantially an equal array to establish the contrary doctrine. We shall not attempt any review of the cases upon either side, but shall content ourselves with a reference to a single case.   In *Montgomery v. Crossthwait*, 90 Ala. 553 ( 8 South. Rep. 498), this question was directly decided by the supreme court of Alabama, and the judge who pronounced the opinion of the court entered upon the consideration of this question with a confessed bias in favor of the proposition that notes of this kind are not negotiable, but after, as he says, ''a more careful investigation into the adjudged cases, and especially a more critical consideration of the reasons upon which the divergent conclusions of other courts are made to rest,'' he had become convinced that the rule that such notes are negotiable was the proper one. In the course of the opinion in this case a large number of authorities upon each side of the proposition are cited and commented upon, and the opinion gives evidence of a most careful examination of the question, and we are satisfied with the result thereof.

It follows that the note sued upon was, in our judgment,

negotiable, notwithstanding the condition for the payment of attorney's fees contained therein, and that in holding to the contrary, and for that reason excluding it from evidence, under the circumstances shown by the record, the lower court committed error for which its judgment must be reversed, and the cause remanded for a new trial.

DUNBAR, C. J., and ANDERS, SCOTT and STILES, JJ., concur.